Council Saad Ahmed for the petitioners, your honors. Your honors, the main issue in this case is whether one of the central reasons why the petitioner was targeted in Kazakhstan was based on a protected asylum ground as required under the REAL-ID Act. The REAL-ID Act, which was enacted on May the 11th of 2005, requires that all asylum applicants must establish that one of the central reasons they were targeted in their homelands was on account of a protected asylum ground. In this case, there is both a direct Counsel, can I just interrupt you for a moment? We had some indication that this may be the first REAL-ID Act case in the Ninth Circuit. Is that your understanding as well? Yes, your honor. There's no precedent out there yet. There's no precedent out there. That's my understanding, your honor. And in this case, there's both a direct as well as circumstantial evidence to support a conclusion that petitioner was attacked and sexually assaulted by two Kazakh men on January the 10th of 2005 because she's an ethnic Russian living in Kazakhstan. The racially derogatory statements made by her attackers, their ethnic backgrounds, and most importantly, the timing of the sexual assault supports the conclusion that the central reason why she was targeted for persecution was because she was Russian. In a matter of JBN, which interprets the nexus requirement under this new REAL-ID Act, one of the most important thing that court looks at is the timing of the attack. And in this case, the sexual assault happened after she was, after the racial slurs were made, after she was beaten brutally, she was kicked while she was on the floor. That clearly suggests the main motivation of her attackers was the fact that she was Russian living in Kazakhstan. In a matter of JBN, the court cited two circuit court cases as examples as what does not constitute central, excuse me, what does not constitute a central basis for attack. One is a second circuit, excuse me, one is a Fifth Circuit case, which is called Girma v. INS, which is 283F3-664, Fifth Circuit, 2002. Has that been cited in your brief? No, Your Honor. It has not been cited. Before you leave the courtroom, please fill out the form that the deputy clerk will give you. Send it in quadruplicate, three for us and one for your opponent. Yes, Your Honor. I shall do that. Your Honor, in that case, the, a woman in Ethiopia, a wealthy woman in Ethiopia was kidnapped, and her kidnappers asked for ransom. She refused to pay them the ransoms. As a result, she was raped. And the Fifth Circuit held that her attackers were more interested in her financial means, and the key was that the rape occurred after the Petitioner in that case indicated to her attackers that she would not pay them the ransom. And also in matter of GBN, which is the Real ID Act interpretation of nexus by the BIA, two circuit court cases from the Ninth Circuit, one is called Borja v. INS and one, Brians v. INS, the court in both those cases, the BIA held that those cases will not satisfy the new standard under the Real ID Act. And I believe, Judge O'Scanlan, I believe you are one of the dissenters in that, in those cases. But the facts of this case are distinguishable from Borja and Brians. But before you get into distinguishing the cases, you must concede, I assume, that the standard in the Real ID Act is a higher standard than the prior law. And as a matter of fact, if I'm not mistaken, those two cases were specifically referred to in the legislative history, were they not? That's correct. They were. They were. They were. And in those cases, the Ninth Circuit held that if there was some circumstantial evidence, then the nexus requirement would be satisfied. However, under the Real ID Act, the standard is much higher, and the applicant must establish that the main motive for persecution, it cannot be incidental motive, it has to be the main motive, was on account of a statutory protected ground for asylum. Whichever standard one might apply, this is a single incident, serious incident, but a single incident, right? Yes. In which an attack and a sexual assault took place, and there was there were comments during or afterwards about her ethnicity, right? Yes, Your Honors. And that's it? No, that's not the only incident. There were a couple of more incidents. In fact, on a couple of weeks after this first incident, she encountered those two attackers, and those attackers shouted at her and also physically assaulted her cousin who was with her. There's also some evidence, I'm not sure how strong, but one of her cousins was So there appears to be some sort of a pattern. Yes, I agree that the main, the first incident that happened on January the 1st of 2005, January the 10th, excuse me, of 2005 was the main incident in this case. That establishes the nexus requirement, which is the only, which is the only issue before this Court. Well, didn't she go to the police? Isn't that what bothered the attackers with respect to the second incident? Your Honor, that may have been one motive, but it was not the central motive. Excuse me. Even under the Real ID Act, the Board recognizes that the persecutors may have more than one motive. But as long as in mixed motive analysis that at least one of the central motives was on account of the statutory grounds, yes, it's possible that they may have been the attackers may have been angered by the fact that she reported them to the police. But we believe that the record does not compel a conclusion that was the only way or that was the only reason she was targeted. If to the contrary, Your Honors, the record supports the conclusion and compels the conclusion that her attackers targeted her because she was Russian. Now, suppose she goes back to Kazakhstan. What's in the record that suggests that she's going to be the subject of persecution by the Kazakhstani government, either because it's directly or because it permits people like this to do this wantonly? Your Honor, that issue is not before the Court because the BIA did not, did not resolve that issue. It only resolved the the only main issue that it looked at was the nexus issue. So I believe that this case needs to be remanded back to the Board for a determination as to whether if she was targeted on account of a statutory ground, whether there is a well-founded fear of future persecution that she will face. And so this case was decided below simply on past persecution. Yes, Your Honor. Actually, no, it was not even decided on. Yes, actually, I take that back. Basically, the Board determined that the Petitioner did not establish that she was targeted in Kazakhstan on account of her ethnicity. I mean, it did not make an alternative argument or basis for denying her case as to past persecution, even if she had established the necessary nexus in this case. Is there a State Department report in this record? Yes, Your Honor, there is a State Department report. And the State Department report states that since 1991, preferential treatment has been given to local Kazakhs. In fact, in government jobs. Also, the State Department report indicates that displaced Kazakhs during the Soviet era who were exiled are now allowed to return, whereas the rest of the ethnic groups are not. There has been a revival of fundamentalist Islam, not just in Kazakhstan, but in the entire Central Asia. So there is evidence to suggest that there, you know, there is, you know, that there is circumstances, there are circumstances that may indicate a well-founded fear of future harm if she returns. Emphasis on the word may. Yes, Your Honor. All right. Anything further? No, Your Honor. I'll reserve time. Well, let's hear from the government. You have some reserved time, and you may consume it. Thank you. May it please the Court, Sarah Maloney for the respondent. Substantial evidence supports the agency's conclusion that Ms. Parasmova failed to establish that her ethnicity was at least one central reason for the January 10th assault. On this record, a reasonable fact finder could conclude that the assault was not a purposeful act with an ethnic motive, rather than a horrible act of unmotivated violence, street violence against a stranger. Here, there is strong evidence that ethnic persecution of ethnic Russians does not take place in Kazakhstan. The State Department reports, which this Court and the Board have found, are entitled to considerable deference, do not suggest that there is violent tension between ethnic Kazakhs and ethnic Russians that the Kazakh government is unable or unwilling to control. Well, counsel, what about the comments that Mr. Ahmad made with respect to that State Department report? There is evidence in the record that one State Department report does say that the Kazakhstan government gives preferential treatment to ethnic Kazakhs in government jobs and in privatizing businesses. However, there is no evidence of violence that the government would permit violence between civilians. In fact, in this case, there is evidence that the Kazakh police were investigating the crime. Further, that Ms. Parasimova testified that the perpetrators used ethnic slurs at one point during the January 10th assault is insufficient to compel the conclusion that the attack was centrally motivated by Ms. Parasimova's Russian ethnicity. She conceded that the erbilite comments during the attack were just an excuse to attack her. A reasonable fact finder could conclude the same of the ethnic remarks. These ethnic slurs were also isolated to one comment during the street assault. The perpetrators never raised ethnicity again as an issue in any of the subsequent random encounters. Moreover, that Ms. Parasimova conceded that the subsequent attack, the perpetrators stated that they were doing so to seek revenge for her reporting the original attack to the police, supports the conclusion that any subsequent attacks were acts of revenge and they weren't ethnically motivated. Did the IJ indicate what or make a finding with respect to what he concluded was the central reason for this attack? Well, I guess there needs to be some clarity with the immigration judge's decision and what exactly the board adopted, or some clarification. Upon further review, closer review of the agency's decisions, it's clear that the petitioner didn't establish the requisite nexus, and he really didn't make any specific findings as to what evidence she should have produced to corroborate her testimony. Therefore, the new corroboration component of real ID really isn't at issue in this case. And further evidence that the attack, that the perpetrators weren't centrally motivated to attack her on account of her Russian ethnicity is that there's no evidence that the perpetrators knew who Ms. Parasimova was before they encountered her randomly on the street. And also the fact that the assault took place on the street, on a street while she was walking, rather than in a place such as her home, further suggests that the perpetrators may not have been targeting her specifically on account of her Russian ethnicity. What evidence, if any, was offered on the notion of government acquiescence? I'm speaking to the potential for future persecution. Was there any evidence in the record about Kazakh acquiescence in activities of individuals like the ones that attacked her? No, there's no evidence whatsoever that the Kazakhstan government or Kazakh police would permit this to go on or that it even occurs. And in fact, the board did find that the petitioner didn't show either past persecution or the potential for future persecution because she didn't show in – she didn't make the requisite nexus showing. However, the petitioner waived the finding of prospective harm in his opening brief, and that's why that issue isn't before the Court. Where did this happen in Kazakhstan? I'm sorry. When did the assault occur? Where? In her hometown. I don't have it right now. It's not the capital. It wasn't in Almaty. No. I believe it started – I thought her town started with a nest, but I'd – the petitioner would probably clear that up. That's fine. Thank you. Unless there are any further questions. No further questions. Thank you, counsel. Mr. Almat, do you have some reserve time? Your Honors, the only issue before this Court is whether she was targeted for harm in Kazakhstan on account of her ethnicity. That's the only issue that the Court has before it, because that's the only reason the board gave in dismissing her claim. And the I.J. concluded that it was not the central reason. That's correct. And the question you have to help us with is whether there was substantial evidence to support that conclusion. Yes, Your Honor. I believe substantial evidence supports it and compels it, because if you look at the manner in which the assault – Well, it compels the conclusion that the I.J. was wrong, is what you're saying. Yes, Your Honor. The manner in which the assault took place, the men who attacked her, attacked her because she was ethnic Russian. They – if they just wanted to rape her, Your Honor, they – by – you know, why did they spit on her? Why did they make the racially derogatory comments? Why did they throw her on the floor and beat her so brutally? The rape occurred after they made those racially derogatory comments against her. And that establishes – Am I – did I miss this from my understanding? It was an attempt? A sexual assault. Excuse me, Your Honor. That was a sexual assault against her, yes. It was an attempt. That's right. That was an attempt. Correct. Why would they – if their reason for harming her was they wanted to rape her, why did they beat her so brutally? Why did they make those comments? And I believe that the evidence in the record not only supports the conclusion and satisfies the requirement under the REAL-ID Act that the central reason why Petitioner was targeted in Kazakhstan was on account of her ethnicity. Thank you, counsel. The case just argued will be submitted for decision, and the Court will hear argument in Detal v. Mukasey.
judges: O'scannlain, Hawkins, Selna